IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,**<br><br>*Plaintiff*,<br><br>v.<br><br>**PETER NERONHA, in his official capacity as Attorney General of the State of Rhode Island; DAVID BERGANTINO, in his official capacity as Auditor General of Rhode Island,**<br><br>*Defendants*. | No. 1:25-cv-00501-JJM-AEM |

**PLAINTIFF'S RESPONSE TO OCTOBER 9, 2025 ORDER**

**INTRODUCTION**

Plaintiff Pharmaceutical Research and Manufacturers of America ("PhRMA") responds to the Court's October 9, 2025 Order, directing PhRMA to show cause why its motion for preliminary injunction "should not be summarily denied as res judicata" in light of the Court's recent oral rulings against the plaintiffs in *AbbVie Inc., et al. v. Neronha, et al.* ("*AbbVie*"), CA25-388JJM, and *Novartis Pharmaceuticals Corp. v. Neronha, et al.* ("*Novartis*"), CA25-387JJM. As set forth herein, PhRMA respectfully submits that the requirements for res judicata cannot be met here.

PhRMA, however, recognizes that regardless of whether the doctrine of res judicata could apply (it cannot), the Court may be considering summarily denying PhRMA's motion for reasons similar to those addressed by the Court's oral ruling in those two other cases. PhRMA submits that it has raised distinct arguments not presented by either AbbVie or Novartis. Thus, this Court had no occasion to address such arguments in its prior rulings. In order to ensure a more complete record for appeal, PhRMA respectfully requests a ruling on the merits of its motion, and especially on PhRMA's distinct arguments. PhRMA would welcome the opportunity to discuss steps to facilitate the efficient management of this case with minimal duplication of effort by the Court.

**ARGUMENT**

Res judicata is inapplicable here. Both claim and issue preclusion require a final judgment on the merits. *See Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010) (claim preclusion); *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) (issue preclusion). The Court's rulings on the AbbVie and Novartis motions for preliminary injunction cannot qualify as final judgments on the merits. *See Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 119 (D.N.H. 2012) (holding that "final judgment on the merits" element was "absent" where res judicata defense was based on preliminary injunction ruling); *Veale v. Town of Marlborough*, No. 92-cv-355, 1994 WL 263700, at *3 (D.N.H. Apr. 11, 1994) ("[A] decision on

1

a preliminary injunction does not amount to a final judgment on the merits, and 'issues litigated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel.'" (quoting *Kuzinich v. Cnty. of Santa Clara*, 689 F.2d 1345, 1350-51 (9th Cir. 1982))).

Even if the finality requirement were met here (it is not), res judicata is also inapplicable given that PhRMA was not a party or in privity with a party in CA25-387JJM or CA25-388JJM. *See Airframe Sys.*, 601 F.3d at 14; *Manganella*, 700 F.3d at 591. PhRMA is not aware of any case where a trade association was bound by res judicata in this type of circumstance, *i.e.* where one member of an association has previously litigated in similar circumstances.[1] While a member might benefit from prior trade association litigation via any relief awarded (and so might be bound in certain circumstances by an unfavorable judgment), the converse is not true—relief granted to a trade association member in an individual action generally does not inure to the benefit of other trade association members or to the trade association itself. And, if the factors that typically apply to determine whether a trade association member could be bound by a prior ruling against the trade association were to apply to determine whether a trade association could be bound by a prior ruling against a member, PhRMA would not be bound in any case. As to the first factor, PhRMA has not financially contributed to the litigation in CA25-387JJM or CA25-388JJM. *See Gen. Foods Corp. v. Mass. Dep't of Pub. Health*, 648 F.2d 784, 788 (1st Cir. 1981) (considering whether member could be bound to prior trade association matter outcome and identifying financial contribution to the association as a factor). Nor has PhRMA actively participated in or provided input on the referenced litigation. *See Nash v. Bowen*, 869 F.2d 675, 679 (2d Cir. 1989) (pointing to members' consultation with association); *Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 82

---

[1] AbbVie is not a member of PhRMA and bears no relationship to PhRMA. While Novartis is a member, it has not had a role in PhRMA's litigation regarding the Rhode Island law and has not participated in PhRMA's litigation in this case.

(D.D.C. 2020) (stating that res judicata should be applied with great care and noting that case law requires, at minimum, active participation by the party to be bound). PhRMA accordingly submits that res judicata is inapplicable here.

To the extent that the Court is considering denying PhRMA's motion for the same legal reasons described in the Court's oral rulings in CA25-387JJM and CA25-388JJM, PhRMA submits that its argument differs in material respects from the arguments presented in those cases.[2] PhRMA's motion focuses solely on its preemption claim, unlike the parties' motions in CA25-387JJM and CA25-388JJM, and explains in detail why and how Rhode Island's law impermissibly seeks to regulate a federal program, enacted pursuant to Congress's Spending Power, by changing the terms of manufacturers' 340B offers and outlawing federally permissible one contract pharmacy limits and claims data requirements.

As PhRMA has explained, 340B is a product of Congress's Spending Power, which means the obligations imposed on manufacturers via participation in 340B and potential penalties must be imposed "unambiguously" by Congress. *E.g.*, *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219-20 (2022) (recipient of federal funds must not only know "what rules it must follow" but "also what sort of penalties might be on the table"); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (question is whether the legislation "furnishes clear notice"); ECF No. 11-1 at 1-3, 14-17 (explaining the Spending Power and Intergovernmental Immunity doctrines and how they apply here). That means that, in effect, the presumption against preemption is inverted into a presumption in favor of preemption in this context. ECF No. 11-1 at 1-3, 14-17. Thus, in cases like this one where a State directly targets a federal Spending Power

---

[2] This factor provides another reason that issue preclusion is inapplicable. *See Manganella*, 700 F.3d at 591 (for issue preclusion to apply, the "issues raised in the two actions" must be "the same" and the issues must have been "actually litigated in the earlier action").

3

program, "conflict with federal policy need not be as sharp as that which must exist for ordinary pre-emption," because the uniquely federal interest in "obligations to and rights of the United States" "changes what would otherwise be a conflict that cannot produce pre-emption into one that can." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 507-08 (1988). Thus, courts are "more vigilant in striking down state incursions into subjects that Congress may have reserved to itself." *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 73-74 (1st Cir. 1999), *aff'd, Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).

This approach makes sense given that States lack authority in our constitutional system to single out for special regulation "the United States or those with whom it deals." *South Carolina v. Baker*, 485 U.S. 505, 523 (1988). Consistent with that principle, the Supreme Court has held time and again that States may not "control" federal operations by regulating those that contract with the federal government to advance federal objectives. *See Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 786-89, 866-67 (1824); *Crandall v. Nevada*, 73 U.S. (6 Wall.) 35, 44-45 (1867); *Okla. Tax Comm'n v. Tex. Co.*, 336 U.S. 342, 364 (1949). Yet, Rhode Island's law runs afoul of all these principles by targeting manufacturers if—and only if—they participate in the 340B program, and imposing special obligations on them because of that participation.

Rhode Island's law is particularly problematic given how it operates on the terms of manufacturers' 340B offers—a topic not fully explored by the parties in CA25-387JJM and CA25-388JJM. As PhRMA discussed in its motion, a state law is conflict preempted where it interferes with a private party's rights conferred by federal law. *See Murphy v. NCAA*, 584 U.S. 453, 477-78 (2018); ECF No. 11-1 at 22-25. Here, *Novartis Pharmaceuticals Corp. v. Johnson* establishes that Congress allowed manufacturers the flexibility to set certain reasonable terms of their 340B "offers" (*e.g.*, delivery terms and other reasonable conditions of purchase) other than the price,

4

and that manufacturers discharge their federal 340B obligations so long as their "offers" to sell at the statutory price remain bona fide in light of the offer's other terms. 102 F.4th 452, 460-62 (D.C. Cir. 2024). More specifically, under federal law, manufacturers are explicitly permitted and therefore have the right to include reasonable conditions regarding contract pharmacies in their 340B bona fide offers, including a "one contract pharmacy" limitation and a requirement to provide claims data. *Id.* at 459-64; *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 704-06 (3d Cir. 2023); *Murphy*, 584 U.S. at 477-78. As PhRMA has explained, by outlawing these very conditions and applying its law to drugs not actually purchased under 340B, Rhode Island vastly expands the number of 340B transactions, requiring additional reduced-price sales (at prices as low as a penny) that are *not* required under federal law, and that *would not and could not occur* under the federal 340B program in the absence of Rhode Island's law. ECF No. 11-1 at 13-14, 22-25.

PhRMA has also submitted four distinct declarations, including from two PhRMA members,[3] explaining in detail how the 340B offer-and-acceptance regime, and manufacturers' "shall offer" obligation in 42 U.S.C. § 256b(a)(1), are overridden by Rhode Island's law compelling additional 340B-priced transactions. ECF Nos. 11-3 at ¶¶ 9-15, 18-19; 11-4 at ¶¶ 8-14, 17-18; 11-5 at ¶¶ 18-29; *see also* ECF No. 11-1 at 22-25. Through S. 114, Rhode Island thus is prohibiting drug manufacturers from taking actions they are entitled to take under federal law— including imposing a one-contract-pharmacy limitation and claims-data requirement on their bona fide federal 340B offers under 42 U.S.C. § 256b(a)(1) and the federal agreement manufacturers sign to enter the 340B program. *Novartis*, 102 F.4th at 459-64. This has the effect of destroying the offer-and-acceptance construct Congress mandated and the balance it struck by compelling

---

[3] As previously noted, Novartis has not participated in PhRMA's litigation here, and it did not serve as a member declarant.

additional sales at reduced 340B prices. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987); *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 120 (2011). Those arguments are central to demonstrating that preemption of Rhode Island's law is fully consistent with—indeed, mandated by—our federalist system.

While the parties in CA25-387JJM and CA25-388JJM at times gesture to certain aspects of these arguments, neither party fleshes out or fully addresses the arguments and evidence presented by PhRMA here. Nor did the Court's oral decision explicitly address those arguments.

Despite these important distinctions from the claims advanced by AbbVie and Novartis in CA25-388JJM and CA25-387JJM, PhRMA recognizes that the Court nevertheless may consider denying PhRMA's motion for the same or similar reasons discussed in the Court's oral rulings in those cases. In the event that the Court so concludes, PhRMA respectfully asks that its arguments—including but not limited to those which are distinct from the arguments of the plaintiffs in the referenced cases—be preserved for appeal, with the Court issuing an appealable order that PhRMA may promptly appeal, so as to avoid piecemeal litigation before distinct panels of the First Circuit. *Cf. Pharm. Rsch. & Mfrs. of Am. v. Fitch*, No. 24-60340 (5th Cir. Jan. 16, 2025), Doc. 86 (hearing similar appeals before a common panel).

PhRMA appreciates the Court's attention to this matter and would welcome the opportunity to discuss with the Court and Defendants any efficient approach to resolution of PhRMA's motion.

Dated: October 16, 2025

Respectfully submitted,

**PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA**

By its attorneys,

*/s/ Aaron L. Weisman*
Aaron L. Weisman (#4438)
William E. O'Gara (#4257)
Brian J. Lamoureux (#6211)
PANNONE LOPES DEVEREAUX & O'GARA LLC
Northwoods Office Park
130 Atwood Avenue, Suite 215N
Johnston, RI 02919
401 824 5100 t
401 824 5123 f
aweisman@pldolaw.com
wogara@pldolaw.com
bjl@pldolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2025, I caused the foregoing document to be filed via the Court's CM/ECF electronic filing system ("CM/ECF"), which sent notice to all parties receiving notification through CM/ECF.

/s/ Aaron L. Weisman