# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA <br><br> Plaintiff, <br> v. <br><br> PETER F. NERONHA, in his official capacity as ATTORNEY GENERAL OF RHODE ISLAND, and DAVID BERGANTINO, in his official capacity as Auditor General of the State of Rhode Island <br><br> *Defendants*. | Case No. 25-cv-501 <br><br> Chief Judge John J. McConnell, Jr. |

## BRIEF OF *AMICI CURIAE* THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, THE HOSPITAL ASSOCIATION OF RHODE ISLAND, AND THE AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS <u>IN SUPPORT OF DEFENDANT</u>

Nicholas J. Hemond, (#8782)
DarrowEverett LLP
1 Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 453-1200
Fax: (401)453-1201
nhemond@darroweverett.com

William B. Schultz*
Margaret M. Dotzel*
Alyssa M. Howard*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com
ahoward@zuckerman.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTERESTS OF *AMICI CURIAE* .................................................................................................... 1

INTRODUCTION ............................................................................................................................. 2

ARGUMENT .................................................................................................................................... 3

I.   PHRMA'S REFERENCES TO "THE SPENDING POWER" DO NOT SUPPORT ITS PREEMPTION CLAIM. ................................................................................ 3

CONCLUSION ................................................................................................................................. 7

## TABLE OF AUTHORITIES

**CASES**

*AbbVie et. al v. Drummond*,
    25-cv-726 (W.D.O.K.) (Oct. 31, 2025) ................................................................ 2, 3

*AbbVie, Inc., et al. v. Weiser, et al.*,
    No. 25-CV-1847, 2025 WL 3041825 (D. Colo. Oct. 31, 2025) ........................... 2, 5

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................................ 6

*Boyle v. United Technologies Corp.*,
    487 U.S. 500 (1988) ......................................................................................... 4, 5, 6

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ............................................................................................ 3, 4

*Nelson v. Great Lakes Educ. Loan Services, Inc.*,
    928 F.3d 639 (7th Cir. 2019) .................................................................................. 5

*Novartis Pharms. Corp. v. Frey*,
    Nos. 1:25-cv-00407-JCN, 1:25-cv-00416-JCN, 2025 WL 2813787
    (D. Maine Sept. 23, 2025) .................................................................................. 4, 6

*Pharmaceutical Research & Manufacturers of America v. Walsh*,
    538 U.S. 644 (2003) ............................................................................................ 6, 7

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) ................................................................................................ 4

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ................................................................................................ 4

**OTHER AUTHORITIES**

Transcript, Mot. for Prelim. Injunct' Hearing (Dkt. 22-1) .............................. 2, 3, 4. 6, 7

## INTERESTS OF *AMICI CURIAE*

*Amici* and their members are committed to improving the health of the communities they serve through the delivery of high-quality, efficient, and accessible health care. The discounts provided by the 340B program are essential to achieving this goal. *Amici* therefore have a strong interest in the success of Rhode Island's legislative efforts to protect the 340B program.

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences, including cases related to the 340B program.

**340B Health** is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,600 public and private nonprofit hospitals and health systems participating in the 340B program.

The **Hospital Association of Rhode Island (HARI)** is a statewide organization that assists member hospitals in effectively meeting the health care needs of Rhode Island through advocacy, representation, education, and services. HARI ensures that the needs and perspective of members are heard and addressed in state and national health policy development, legislative and regulatory debates, and system transformation matters. Together with its members, HARI works to ensure that all Rhode Islanders receive comprehensive, high-quality care.

The **American Society of Health-System Pharmacists** (ASHP) is the largest association of pharmacy professionals in the United States. ASHP advocates and supports the professional practice of pharmacists in hospitals, health systems, ambulatory care clinics, and other settings spanning the full spectrum of medication use. For over 80 years, ASHP has championed innovation

in pharmacy practice, advanced education, and professional development, and has served as a steadfast advocate for members and patients.

## INTRODUCTION

*Amici* respectfully refer the Court to the Amicus Briefs of American Hospital Association, *et al.*, filed in *Novartis Pharms. Corp. v. Neronha*, No. 1:25-cv-387 and *AbbVie v. Neronha*, No. 25-cv-388, which challenge the same law as the one challenged in this case and which are also pending before this Court. *See* Amicus Br. of AHA *et al.*, ECF No. 29, *Novartis Pharms. Corp. v. Neronha*, No. 25-cv-387; Amicus Br. of AHA *et al.*, ECF No. 28, *AbbVie v. Neronha*, No. 25-cv-388. The amicus briefs filed in the *Novartis* and *AbbVie* cases explain the history of drug companies' policies surrounding contract pharmacies (including the drug companies' change in position); the importance of contract pharmacy arrangements in Rhode Island; that Congress did not create or occupy a field when it established the 340B program; and that Chapter 288 is not conflict-preempted because it does not expand the scope of the 340B program's federal requirements, and does not interfere with 340B's enforcement regime, the federal statutory audit processes, nor HRSA's rebate pilot program.

This Court has already correctly concluded that Chapter 288 is likely neither field nor conflict preempted and likely does not violate the dormant commerce clause nor the takings clause. Mot. for Prelim. Injunct' Hearing at 56:15-26 (Dkt. No. 22-1).[1] *Amici* submit this brief to explain

---

[1] This Court's prior order is consistent with the "very large majority" of courts to rule on similar claims regarding similar state laws, including the only two circuit courts to address the issue and, most recently, a district court in the District of Colorado, which denied a motion for preliminary injunction challenging an analogous state law, finding that the Colorado law was not preempted and did not violate the Takings Clause. *AbbVie et. al v. Weiser*, 25-cv-1847 (D. Col.) (Dkt. No. 115) (October 31, 2025). However, recently, a district court in the Western District of Oklahoma preliminary enjoined an analogous state statute, erroneously finding that the Oklahoma law was preempted by Section 340B and violated the Takings Clause. *AbbVie et. al v. Drummond*, 25-cv-726 (W.D.O.K.) (Dkt. No. 59) (October 31, 2025). That decision was wrongly decided for all of

why the unique arguments made by Plaintiff Pharmaceutical Research and Manufacturers of America (PhRMA) in its challenge to Chapter 288 also are unlikely to succeed on the merits.[2]

## ARGUMENT

**I.      PhRMA's References to "The Spending Power" Do Not Support Its Preemption Claim.**

In a misguided effort to save its preemption claim, PhRMA now argues that "States cannot modify, add to, or interfere with a federal program" (here the Medicaid and Medicare programs) enacted under congressional Spending Power "unless Congress unambiguously authorizes states to make such changes—and Congress has not granted states any such authority here." Pls. Mot. for Prelim. Injunction. (MPI) (ECF No. 11-1) at 14. This claim is meritless.

PhRMA mischaracterizes the cases it cites in support of this misguided argument. Plucking a single phrase out of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 347 (2001)— "originates from, is governed by, and terminates according to federal law"—PhRMA broadly contends that states cannot directly regulate on subjects that any Spending Clause program covers. The Supreme Court has never countenanced such a far-reaching proposition in *any* context, let alone in the specific Spending Clause context. As another court in this circuit recently explained in evaluating a challenge to an analogous state law, "[t]he Supreme Court, however, has never adopted a categorical rule that requires a finding of preemption whenever a state law is addressed

---

reasons this Court's previously explained. Mot. for Prelim. Injunct' Hearing at 56:15-26 (Dkt. No. 22-1). *Amici* respectfully submit, moreover, that the *Drummond* Court's outlier opinion misunderstood key aspects of the federal 340B Program (including who purchases and owns 340B drugs when they are shipped to contract pharmacies, the replenishment model, and the federal audit process), incorrectly found that the state statute regulated price (and not delivery), and failed to conduct a proper Takings Clause analysis.

[2] For the reasons set forth in Defendants' Opposition, PhRMA also fails to meet the remaining factors required for this Court to grant a preliminary injunction.

directly to those participating in a federal program where the federal statute does not rely on the state to implement the program." *Novartis Pharms. Corp. v. Frey*, Nos. 1:25-cv-00407-JCN, 1:25-cv-00416-JCN, 2025 WL 2813787, at *10 (D. Maine Sept. 23, 2025). It is therefore no surprise that the cases PhRMA cites do not come close to offering such a sweeping rule.

*Buckman* and *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), are far narrower than PhRMA would have this court to believe. *Buckman* did not find preemption of state law simply because it involved a Spending Clause program. Instead, *Buckman* held that "'[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied." *Buckman*, 531 U.S. at 347 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). By contrast, the Supreme Court itself distinguished *Buckman* on these exact grounds. In *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009), the Court explained: "[T]he dissent's reliance on *Buckman Co. v. Plaintiffs' Legal Comm*. is especially curious, as that case involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety as matters to which the presumption does apply." This case indisputably involves matters of health and safety—issues that fall squarely within a state's historic police powers. Even more to the point, it involves a particular aspect of health and safety—drug delivery and pharmacies—where the 340B statute is silent. *E.g.*, Mot. for Prelim. Injunct' Hearing at 56:15-26 ("the Rhode Island law deals with where those [340B] drugs should be delivered."); *id.* at 56:2-7 ("while Rhode Island state law says nothing about what price a drug manufacturer participating in the program can charge, it does address covered entities' 'distribution of drugs to patients and the role of pharmacies in such distribution,' a subject that 340B does not cover."). *Buckman* is therefore inapposite.

*Boyle* also involved a fundamentally different federal interest. There, the Court considered whether "a contractor providing military equipment to the Federal Government can be held liable

-4-

under state tort law." 487 U.S. at 502. In so doing, the Court established what is commonly known as the "Government contractor defense" to state tort liability. It found the state tort law at issue to be preempted because "the liability of independent contractors performing work for the Federal Government, like the liability of federal officials, is an area of uniquely federal interest." *Id*. at 505 n.1. Again, that unique federal interest is a far cry from matters of health and safety that are traditionally regulated by the States, as Rhode Island did here with Chapter 288. Thus, taking PhRMA's argument on its own flawed terms, the absence of a uniquely federal interest is fatal. *See AbbVie, Inc., et al. v. Weiser, et al.*, No. 25-CV-1847-WJM-KAS, 2025 WL 3041825, at *7 (D. Colo. Oct. 31, 2025) ("AbbVie has not identified a 'uniquely federal interest' here."); *see id*. ("*Buckman* and *Boyle* . . . do not support the broad contention that there is necessarily a field preemption issue where 'a state law explicitly depends on a federal statute.'").

But even if PhRMA could somehow establish such an interest here, its argument would still fail because it completely ignores a vital portion of *Boyle*'s holding. Critically, the *Boyle* Court did not stop when it found that the state tort law directly regulated a "uniquely federal interest," as PhRMA would have this Court do here. More is needed to establish preemption. Indeed, *Boyle* held that the involvement of an "area of uniquely federal interest does not, however, end the inquiry. That merely establishes a necessary, not a sufficient, condition for the displacement of state law." *Id*. at 507. To find preemption, the Court explained, there still must be a "significant conflict" between "an identifiable "policy or interest and the [operation] of state law, or the application of state law would frustrate specific objectives of federal legislation." *Id*. Or, as the Court pithily put it: "conflict there must be." *Id*. at 508; *see also Nelson v. Great Lakes Educ. Loan Services, Inc.*, 928 F.3d 639, 651 n.3 (7th Cir. 2019) (discussing the *Boyle* framework and finding

a state law designed to "protect[] its consumers by providing oversight of federal student loan servicers" was not preempted).

There is, however, no conflict here. This Court has already held that a drug manufacturer is unlikely to succeed on a conflict preemption challenge to Chapter 288. Mot. for Prelim. Injunct' Hearing at 56:8-9. Under the *Boyle* framework, the Court's prior reasoning, which found that the Rhode Island state law and the federal 340B statute "cover different aspects of the process" and, therefore, the state law was not conflict preempted. This holding applies with equal force to defeat PhRMA's Spending Clause claim. For that reason, too, PhRMA's Spending Clause contention should be rejected.

If all of this were not enough, PhRMA's newfangled Spending Clause argument cannot survive previous applications of *Pharmaceutical Research & Manufacturers of America v. Walsh*, 538 U.S. 644, 670 (2003) in cases involving analogous state laws in this circuit. *Novartis v. Frey*, 2025 WL 2813787, at *8–12. *Walsh* involved Medicaid—a paradigmatic Spending Clause program. *E.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015) ("Like other Spending Clause legislation, Medicaid…."). That case also involved a state law that directly regulated drug manufacturers that participated in a federal program enacted under Congress' spending power and, indeed, contracted with the federal government when participating in it. One even might say, as PhRMA does here, that *Walsh* involved a state program that "barge[d] into" a federal program and "impose[d] significant new obligations on drug manufacturers that change the federal bargain." MPI at 16. One might also say, like PhRMA does, that *Walsh* involved a state law that "single[d] out those contracted with the federal government for special obligations that do not apply to those who do not participate in federal programs." *Id*. at 17.

-6-

But absolutely nothing about the Spending Clause context in *Walsh* changed the Supreme Court's preemption holding. Therefore, nothing about the Spending Clause context of the 340B program should alter this Court's earlier conclusions that "the reality" is that the state law and the federal law "cover different aspects of the [340B] process" and there is no field or conflict preemption in this case. Mot. for Prelim. Injunct' Hearing at 56:14-17. Put simply, just as the Spending Clause was irrelevant in *Walsh*, it is irrelevant here. Accordingly, this Court should reject PhRMA's lead preemption argument, just as it previously rejected its more traditional field and obstacle preemption claims.

## CONCLUSION

For the foregoing reasons and those set forth in *Amici*'s Brief filed in *Novartis v. Neronha* and *AbbVie v. Neronha*, PhRMA's Motion for a Preliminary Injunction should be denied.

Dated: November 06, 2025

Respectfully submitted,

Nicholas J. Hemond, (#8782)
*as Local Counsel for Amici Curiae*
DarrowEverett LLP
1Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 453-1200
Fax: (401)453-1201
nhemond@darroweverett.com

By: William B. Schultz*
Margaret M. Dotzel*
Alyssa M. Howard*
Courtney Christensen*
Zuckerman Spaeder LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com
ahoward@zuckerman.com
cchristensen@zuckerman.com
*Attorneys for Amici Curiae*
**pro hac vice motion to be filed*

-8-

## **CERTIFICATE OF SERVICE**

      I, Nicholas J. Hemond, do hereby certify that on November 6, 2025, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing.

      */s/ Nicholas J. Hemond*